The opinion of the court was delivered by
Duncan, J.
John Schaeffer, the administrator of Martin Schaeffer, deceased, appealed from the decree of the Orphans’ Court of Northampton County, charging him with interest on certain debts under the following circumstances:
Henry Schaeffer, the elder, father of Martin, oí John, and of Henry Schaeffer, the younger, died some time before the 12th of August, 1805, intestate, leaving real estate. Proceedings were had in the Orphans’ Court, the estate was valued, and accepted at the valuation by Henry, who gave, bonds to the children for their respective shares, and among them a bond to Martin, for £429 18s. 9d., payable in two instalments, one on 12th August-, 1802, for *265 ¿6286 12s. 6d., the other for ¿6143 6s. 3d., to be paid on the widow’s death. Martin, being absent, the bond was deposited in the office of the clerk of the Orphans’ Court. The widow died on the 24th December, 1801. On the 18th May, 1807, John and Henry made an exchange of lands. Sufficient appears to show, that Henry gave in exchange the land taken at the valuation by him, and as part of the consideration, John agreed to pay this bond, with interest, to become due after 27th May, 1807, and to indemnify Henry. The interest due on the bond up to the time of exchange, was calculated and allowed to John, as a part of the consideration money, to be paid to Henry. Martin left Northampton in 1793, and no ac- • count was received of him until 1806, when his friends received letters from him dated at Natchez. Natchez had then been ceded to the United States, possession taken, and was under the government and jurisdiction of the United States. No further account was received from him; where he lived or died was unknown, but it was presumed he was dead; and in dlugust, 1818, John admi-• nistered, and on the 12th November, 1819, he filed an administration account in the Register’s office, and charged himself with the principal, and the Register added a charge of interest on the instal-ments, on the first .15296 12s. 6d., and on the second from the death of the widow. The Orphans’ Court confirmed the account as settled by the Register, and from this decree, John has taken this appeal, alleging, that inasmuch as it was not known where Martin was to be found, or whether he was alive or dead; he was not bound to make a tender to him, nor could he do so, and that he stands precisely as if he had made the tender, and Martin had refused; in short, as if this was an action on the bond, with a plea of tender, tout temps prist, and the money brought into court. If John is absolved from the payment of interest, he must show some strict rule of law, which produces this consequence, for our sense of justice revolts at it, and we should regret to find any principle of law which would screen him from paying this just debt; for the interest due on this bond, is as much due ex debito justitias, as the principal is.
A condition, on the non-performance of which a forfeiture is to be incurred, or on the performance of which, an estate is to be raised or re-vested, is a very different matter from a condition to pay money, which works no injury, but is barely a compensation for the use of the money. As to the forfeiture of double the sum, that is now merely nominal. And even in the first cases, if the obligee is out of the realm, the obligor is not bound to go out of the realm unto him, and because the feoffee is the cause, that the feoffor cannot tender the money, the feoffor shall enter into the land as if he had duly tendered it, according to the'eondition. Co. Litt. 210. And here there is no evidence that ever Martin remained out of the United States. The only account we have of him, is in the jurisdiction of the United States. If this would excuse a tender, *266 then John ought to have clearly proved the fact. But where money is secured by bond, payment is at the peril of the obligor, and it is no great burden on him to pay interest. I say nothing of legal impediments, but speak of the absence of the obligee. Now the absent creditor, I mean absent beyond sea, is a privileged creditor. The act of limitations does not run against him, until he come within the - United States; if he is within the United States after the debt becomes payable, it then first runs, and continues to run, notwithstanding subsequent absence beyond sea. It would seem equally reasonable, that his interest should be as much protected by his absence, as the principal. When Martin died we have no account of. From his silence after 1806,' the presumption is, that he died about that time; and John, with full knowledge that in 1806, he was alive at Natchez, promises for a full consideration,, to pay the debt, with the interest that should accrue in 1807. If he then died, even limitation, if the bond was within the limitation law, would not effect this claim, until administration was taken out; for if A. receive money belonging to a person, who afterwards dies intestate, and to whom B. takes out administration, and brings an action against A., who pleads the statute of limitations, and plaintiff replies, showing administration not committed to him within 6 years, though 6 years have expired since the receipt of the money, yet not being so since the administration committed, the action is not barred by the statute. Curry v. Stevenson, Salk. 421. If the principle be true,that absence is an answer to a demand of interest, because there is no one to whom the principal can be tendered, then this consequence would follow, as death would more effectually preclude a tender, interest could never be recoverable mesne between the death of the creditor and taking out letters of administration. This is very , certain, that John has not discovered much anxiety to find him out, and to inform him that his money was ready for him.
Whenever the law prohibits' the payment of the principal, interest during the existence of the prohibition, is not demandable, Hoare v. .Allen, 2 Dali. 102. Even a state of war existing between the two nations, is not a sufficient reason for abating interest, on debts due by the subjects of one belligerent to another, Conn & Jll. v. Penn, Peters Rep. 524, unless all intercourse is forbidden by law. But here is an express promise by John to pay Martin this interest, and where the principal belonged to infants in Ireland, and the- obligor resided here, and there was proof of an express promise by the obligor to pay all the interest, it was held to be recoverable. Exors. of Mease v. Rhodes, cited 2 Dall. 132, 133.
There is but one case ip which uncore prist, without tender, has been deemed a good plea, and that is, in case of a legacy, or bond given for the performance of a will. 1 Lev. 87. Slannings Case, Poph. 102. Thomson & Wife v. The Exors. of Young Blood, 1 Bay, 249, and Knapp. v. Powell, Pr. Ch. 11.
*267 It. is the duty of a legatee to demand his legacy, to make himself known to the executor, as there is no privity between them. Yet even in that case, it would seem," that he should make out what his plea states, that he has been always ready, and the money by him. For if he has used the money, he ought to pay interest. There is, however, no strict obligation on the executor to scent out the legatee, and make a tender to him, as there is in the case of an original debtor, who must pay at his peril. But if the fund on which the legacy is charged produces an interest, then the legatee is entitled to interest. In Scanning’s Case, there is another principle stated, which is, that if the obligee fraudulently keeps out of the way of the obligor, to avoid a tender, this would be equivalent to a tender. This seems reasonable. But it is a state of things not likely to occur again in this country. It once did, when continental money was a legal tender. Then the debtor followed his flying creditor, hunted him down with as' little mercy as the creditor after the return of peace, pursued the debtor. It has been said, that there is no express decision to be found in the books. I think there is; but if there were not, it is because the objection to payment of interest was never considered as-tenable; the right has never been questioned: It is not from decided cases alone, that we are to take the law. Long continued usage without objection, makes the law, though the point has never been raised in-argument.
, The correspondence between Mr. Jefferson, and Mr. Hammond, subjoined to the case of Hoare v. Allen, and Conn. v. Penn’s Lessee, and the authorities referred to, establish, that the absence beyond sea of a creditor, is no impediment to the recovery of interest. In the very able letter of Mr, Jefferson, the subject is fully considered, and the exemption from interest on the ground of absence, never claimed. Indeed,, had this been considered as the law, the long protracted controversy about payment of interest on British debts during the revolutionary war, would have been a very idle one." In all the contested cases in courts of justice, the exemption was claimed on account of the war, and prohibition of intercourse with the belligerent nation. I transiently glance at the consideration of the question of interest during a war, and prohibition of intercourse. The case does not call for any opinion on it. The decision of Judge Washington, in Conn v. Penn’s Lessee, is of high authority. But this long and anxiously contested question of interest during the revolutionary war on British debts, as well as the correspondence I have referred, prove with a degree of force, equal to any accumulation of precedents, that interest is not suspended during the absence of the creditor beyond sea. Law may exist, and may not be' found in the books: for that may be law which, in point of principle, is so- clear, that it never occurred to any man to question it, till a case came to draw it into doubt.
Justice requires that John should at least be not more favoured *268 than Henry would be in a suit brought on the bond'. He has prevented that in some measure, by taking out administration himself, and thus becoming in fáct both debtor and creditor. In law Henry would not be discharged from interest. Let us see whát are John’s equitable pretences. In equity, it is precisely as if Henry had paid'him the money. .It 'was payment. Retainer is payment. As a trustee, voluntarily undertaking the office, he would-be responsible for' interest. , He used the money, and if he did not use it, he should prove the fact, that it was always lying by him.
A purchaser discovering an incumbrance, may retain; and if he does, enjoying-the profits of the land, he must pay interest.
It is not always true, that if a man cannot be called on for the principal, he is not chargeable with interest. For where vendee goes into possession before conveyance, though the principal cannot be demanded until conveyance tendered, he is chargeable with interest. So where the vendor suffers the money to remain in the hands of the vendee, for the purpose of discharging incumbrances on the land, the vendee must allow interest. That was this very. case.
The amount of this incumbrance, by the acceptance by Henry of the father’s land at'a valuation, was left in John’s hands, who •bought the land, for the purpose of discharging this bond. In every view of the subject, legally or equitably considered, the decree of confirmation by the Orphans’ Court was right.
Proceedings confirmed, and record remitted to the Orphans’ Court for execution.
Proceedings confirmed.